UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No.: | CV 17-03156 AB (RAOx) | Date: | April 4, 2018 |
|---|---|---|---|

| Title: | *William A. Salzwedel et al. v. State of California et al.* |
|---|---|

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**  [In Chambers] **ORDER GRANTING MOTIONS TO DISMISS [Dkt. Nos. 45, 48, 50]**

Before the Court are three Motions to Dismiss ("Motions," Dkt. Nos. 45, 48, 50) First Amended Complaint filed by three groups of defendants. Plaintiff William Salzwedel ("Plaintiff") filed oppositions and the defendants filed replies. For the following reasons, the Motions are **GRANTED**.

**I. BACKGROUND**

Plaintiff's First Amended Complaint ("FAC," Dkt. No. 43), which consists 240 pages and about 600 paragraphs[1], arises out of a conservatorship and trust suit ("Probate Proceedings") before the Ventura County Superior Court and the California Court of Appeal. FAC ¶¶ 231, 448, 449; *see also Conservatorship of Moore*, 240 Cal. App. 4th 1101 (2015).

---

[1] The count is an estimate because the FAC's paragraphs are misnumbered.

In brief summary, Lester G. Moore had a Trust of which his child Poppy Helgren was a contingent beneficiary. *Id.* ¶ 232. In 2009, Moore, who was 80 years old, was diagnosed with dementia and appointed Helgren as his attorney-in-fact. *Id.* ¶ 234. In 2010, Helgren obtained physicians' statements saying Moore was no longer capable of managing his affairs and sought to be named trustee of the Trust, and apparently sought a conservatorship. *Id.* ¶235. Moore was displeased with Helgren's actions and hired Plaintiff, an attorney, to oppose Helgren, including by pursuing an elder abuse claim against her. *Id.* ¶ 240. Moore revoked Helgren's power of attorney and appointed Plaintiff as trustee. *Id.* ¶¶ 239, 243.

The FAC recounts in minute detail numerous events in the Probate Proceedings. Some of the Probate Proceedings are also described in *Conservatorship of Moore*, 240 Cal. App. 4th 1101 (2015), of which this Court takes judicial notice. As relevant, the probate court removed Plaintiff as trustee and appointed a new trustee (Angelique Friend), but before Plaintiff was removed as trustee, he paid himself $148,015.11 in "trustee's fees," which was 31.22% of the trust estate, plus some $32,000 in other fees. *Conservatorship of Moore*, 240 Cal. App. 4th at 1105. Plaintiff filed a petition to settle his accounting, and Friend and Helgren objected. The probate court disapproved of $96,077.14 of Plaintiff's trustee fees, and entered a judgment surcharging him that amount. The Court of Appeal affirmed and ordered its opinion transmitted to the California State Bar so it could consider pursuing disciplinary action, characterizing the situation as follows: "Retained counsel for an elderly person suffering from dementia must safeguard the well-being of the person and his or her financial resources. As we shall explain, here the attorney did neither. The probate court expressly indicated that counsel put his own financial interests ahead of the interests of his client. It surcharged counsel. We agree with the probate court's ruling and its rationale. We commend it. We affirm the judgment." *Conservatorship of Moore*, 240 Cal. App. 4th at 1103.

The FAC lists the following claims on its face page: "1. discrimination, retaliation, coercion, intimidation, threat, harassment on the basis of disability"; "2. disparate treatment"; "3. conservatorship regime in violation of equal protection"; "4. conservatorship regime in violation of civil rights laws"; "5. violation of due process right in adjudication of incapacity and conservatorship"; and "6. declaratory relief." Plaintiff, who is appearing pro se, purports to assert some of these claims on his own behalf, and on behalf of classes of attorneys and conservatees whose civil rights he claims are violated by California's conservatorship regime. FAC ¶ 22. Plaintiff further asserts that each of the named defendants conspired with one another to engage in the alleged violations.

Plaintiff asserts these claims against numerous defendants who can be grouped as follows: the State of California, Judicial Branch of California, Hon. Tani G.

Cantil-Sakauye, Judicial Council of California, Martin Hoshino (administrative director of the Judicial Counsel), Superior Court of California County of Ventura, Hon. Glen M Reiser (who presided over the trial court Probate Proceedings), and California Court of Appeal for the Second District, Division Six (which decided appeals from the Probate Proceedings) (together, the "Judicial Defendants"); Angelique Friend (the conservator Judge Reiser appointed for Moore), and Thomas E Olson and Benton, Orr, Duval & Buckingham, PLC (counsel for conservator Friend in the Probate Proceedings) (together, the "Conservator Defendants"); Mary Webster and the County of Ventura sued as the Office of the Public Defender of the County of Ventura (together, the "County Defendants"); Poppy Helgren (Moore's daughter and the petitioner in the Probate Proceedings); and John Barlow (counsel for Ms. Helgren in the Probate Proceedings).

Now before the Court are three motions to dismiss ("Motion") filed by the Judicial Defendants (Dkt. No. 48), the Conservator Defendants (Dkt. No. 45), and the County Defendants (Dkt. No. 50); Helgren and Barlow filed joinders (Dkt. Nos. 49, 53) which the Court grants. The Motions raise numerous meritorious grounds for dismissal, but the Court will address only the *Rooker-Feldman* doctrine and Plaintiff's lack of standing. In light of the FAC's jurisdictional defects, the Court may not adjudicate the other grounds for dismissal.

## II. DISCUSSION

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's First and Second Causes of Action.

The only federal court authorized "to exercise appellate authority 'to reverse or modify' a state-court judgment" is the United States Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). ("The *Rooker-Feldman* doctrine [] recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, *see* § 1257(a)." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644, n. 3 (2002)). Thus, under the *Rooker–Feldman* doctrine, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003) (explaining history and statutory origin of the doctrine). *Rooker–Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

"The clearest case for dismissal based on the *Rooker–Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court,

and seeks relief from a state court judgment based on that decision." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir.2007) (internal quotation marks omitted). But "*Rooker–Feldman* may also apply where the parties do not directly contest the merits of a state court decision, as the doctrine 'prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment.'" *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (citing *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003)).

*Rooker–Feldman* applies even where the challenge to the state court decision involves federal constitutional issues. *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir.1986). To determine whether a plaintiff making a permissible general constitutional challenge that does not require review of a state court decision in a particular case and an impermissible appeal of a state court determination, the court should ask whether it is " 'in essence being called upon to review the state court decision.' " *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) (citing *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 482 n. 16 (1983)).

Here, Plaintiff's first and second claims are barred by *Rooker–Feldman*. To be sure, the FAC anticipates and attempts to preempt this argument by claiming that Plaintiff's harm derives not from the judgment against him, but rather from the conservatorship regime itself. But the FAC itself belies this characterization, as it contains numerous allegations that Plaintiff's wrongs were caused by the probate and appellate court orders. *See, e.g.*, FAC ¶¶ 23(ii)-(iii), 245, 259, 2260, 262,291, 294, 296-297,306, 336, 339, 343-345, 352.367, 417-418, 429-433, 449-451. To adjudicate these claims, this court would have to sit in review of those state court orders.

The allegations specific to the first and second claims further show that they seek review of state court orders. Plaintiff's first claim, for retaliation, would require this court to decide that the state court actions adverse to him (removing him as trustee, surcharging his fees) were wrongful and motivated by discrimination. *See* FAC ¶ 457 and p. 219 ¶ 145 ("As a proximate result of the above misconduct, Plaintiff has been harmed in that a Judgment of Surcharge of $96,077.14 was entered against Plaintiff . . ."). Plaintiff's second claim, for violation of the Equal Protection Clause, is that Judge Reiser treated him "less favorably" than he treated Friend, Barlow, Olson, and the Benton law firm, FAC p. 222 ¶ 143, and that Plaintiff was damaged by the surcharge order. *Id.* p. 225, ¶ 145. For Plaintiff to prevail on these claims, the Court would have to determine that the state court orders removing him as trustee and surcharging fees were wrong—something this Court lacks jurisdiction to do. *See Doe & Assocs.*, 252 F.3d at 1030 ("Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined" and the district court lacks jurisdiction).

Plaintiff mounts two main counterarguments, but they are unavailing. First, he questions whether the *Rooker-Feldman* doctrine remains viable following the 2005 *Exxon* case, *supra*, but this argument fails in light of the numerous later cases cited throughout the defendants' memoranda. Second, Plaintiff argues that he is not really complaining of being injured by the state court judgment, but instead is complaining that the state courts "went far beyond their proper judicial functions and in fact, attacked the very objective of the representation itself, the defense of Lester Moore's fundamental rights." *See* Opp'n (Dkt. No. 61) 8:2-22. But Plaintiff's FAC repeatedly charges that the state court rulings were in error; implausibly suggesting that the defendants all engaged in misconduct and a conspiracy does not vest this court with jurisdiction to review the state court orders. *See Cooper v. Ramos*, 704 F.3d 772, 782 (9th Cir. 2012) ("The alleged conspiracy is a fig leaf for taking aim at the state court's own alleged errors. It is precisely this sort of horizontal review of state court decisions that the *Rooker–Feldman* doctrine bars."). Relatedly, Plaintiff argues that he is not challenging the imposition of the surcharge, but rather that the surcharge was a pretext for discrimination. *Id.* 9:12-18. This is a distinction without a difference because a challenge to the surcharge as pretextual is in fact an attack on the surcharge judgment.

For these reasons, the Court lacks jurisdiction over Plaintiff's first two causes of action and dismisses them on that basis.

### B. Claims 3, 4, and 5 Are Dismissed for Lack of Standing.

Plaintiff's claims 3-5 represent a wholesale challenge to the legality of California's "conservatorship regime," asserting that it violates the Equal Protection Clause, the Procedural and Substantive Due Process guarantees of the 14th Amendment, the California Constitution, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. §§ 1983 and 1985, among other laws and regulations. Plaintiff purports to bring these claims on behalf of his former client Lester Moore and other similarly situated conservatees and subclasses of conservatees nationwide, arguing that conservatorship regimes throughout the nation violate their constitutional and statutory rights. *See* FAC ¶ 63; *see also* ¶¶ 71-86 (purporting to define numerous classes and subclasses, including nationwide classes challenging the conservatorship laws in every state), *and* ¶¶ 87-110 (alleging that each named defendant also represents one or more class of defendants).

But Lester Moore is not a plaintiff, so this action cannot be a vehicle to pursue claims for him. The claims on behalf of the other conservatee classes fail for the same reason: no member of any of those classes is a named plaintiff. Furthermore, Moore is a conservatee, and only his conservator can represent him. *See* Cal.Civ.Proc. § 372(a) (a party for whom a conservator has been appointed shall be represented by that conservator).

Because Plaintiff is not Moore's conservator, he cannot represent Moore in this action even if Moore were a party to it.

To the extent that Plaintiff himself seeks to represent any class, this tactic fails for at least two reasons. First, Plaintiff is not a conservatee, so he lacks standing to represent any class of conservatees. Second, Plaintiff is appearing pro se, and a pro se litigant cannot represent a class even if he is also an attorney. *See* Local Rule 83-2.2.

### C. Claim 6 Is Dismissed.

Claim 6 seeks declaratory relief wholly derivative of Plaintiff's other claims. It therefore falls along with them, and is dismissed.

## III.  CONCLUSION

For the foregoing reasons, the Motions to Dismiss are **GRANTED**. Plaintiff already amended his complaint once, almost quadrupling its volume yet failing to state any claim that this Court may adjudicate. Furthermore, the defects noted above are jurisdictional and cannot be cured by any plausibly-available amendment. The action is therefore dismissed without leave to amend. The Clerk's Office is ordered to close the case.

**IT IS SO ORDERED.**